```
                    DISTRICT COURT OF THE VIRGIN ISLANDS
                      DIVISION OF ST. THOMAS AND ST. JOHN

In re:                              )
                                    )
PWKH, INC.                          )
                                    )
              Debtor.               )    Bankr. No. 09-30010 (MFW)
                                    )
_____)
                                    )
DAVID SILVERMAN,                    )
                                    )
              Appellant,            )
                                    )    Civil No. 2010-31
              v.                    )
                                    )
BANCO POPULAR DE PUERTO RICO,       )
TERRY HOSIER, ALAN KEITHELY         )
WATTS,                              )
                                    )
              Appellees.            )
_____)
```

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, U.S.V.I.
    *For David Silverman.*

**Justin K. Holcombe, Esq.**
Dudley Topper & Feuerzeig
St. Thomas, U.S.V.I.
    *For Banco Popular de Puerto Rico.*

**Carol Ann Rich, Esq.**
Dudley Rich Davis LLP
St. Thomas, U.S.V.I.
    *For Terry Hosier and Alan Keithely Watts.*

**Adam Hoover, Esq.**
Law Offices of Adam Hoover
St. Croix, U.S.V.I.
    *Bankruptcy Trustee.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is David Silverman's appeal of the Bankruptcy Division's March 11, 2010, Order denying Silverman's Motion to Compel the surrender of a warehouse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant David Silverman ("Silverman") inherited a commercial warehouse located at 171A Estate Altona and Welgunst, St. Thomas, Virgin Islands ("Warehouse") from his father. Silverman used the Warehouse for his commercial food distribution company, Prime Foods & Supply Corporation ("Prime Foods"), until he retired in 1996.

In 1996, Prime Foods & Supply Corporation executed a Contract of Sale and a Lease with PWKH, Inc. ("PWKH"). PKWH is a corporation formed by four employees of Prime Foods. Prime Foods, assigned its rights and obligations under the Contract of Sale and Lease to Silverman.

Pursuant to the Contract of Sale, Silverman sold the Prime Foods business, including assets and goodwill, to PWKH in exchange for $2,638,517. The Contract of Sale states that "[t]he Seller's warehouse is not included in the sale of the assets." PWKH agreed to pay Prime Foods in 300 monthly installments of $17,000. The 300 payments would total $5,100,000 in principal

and interest. PWKH was also obligated to pay Silverman's health and life insurance, food allowance, and salary. These terms were provided in a Promissory Note, which PWKH executed in favor of Prime Foods. The deal was secured with PWKH's assets.

The Lease provides that PWKH would rent the Warehouse from Prime Foods for a term of 30 years. Under the Lease, PWKH was required to pay Prime Foods a security deposit as well as monthly rent. Additionally, the Lease obligated PWKH to assume monthly mortgage payments for the Warehouse. At the end of the Lease, after successfully making all payments, PWKH would obtain ownership of the Warehouse.

By late 2008, after more than ten years of making payments, PWKH fell into arrears. PWKH owed $442,000 in past due payments under the Contract of Sale. Additionally, PWKH owed $201,365 in past due rents under the Lease. Under the Lease, a total of $2,638,085 remained due on the Warehouse before the Lease terminated and PWKH could obtain ownership. Silverman offered to sell the Warehouse to Terry Hosier and Alvin Watts, operators of PWKH, for $200,000. In his appellant's brief, Silverman asserts he made this offer to assist PWKH in obtaining a loan from Banco Popular. A loan would allow PWKH to stay in business and continue repaying Silverman. Although Silverman prepared a warranty deed conveying the Warehouse, Silverman alleges his

*In re PWKH, Inc.*
Civil No. 2010-31
Memorandum Opinion
Page 4

offer to sell the Warehouse was never accepted. PWKH acknowledges it did not pay Silverman for the Warehouse, but argues it did accept the Sales Agreement.

On July 16, 2009, PWKH filed a Chapter 7[1] voluntary bankruptcy petition (ECF 3:09-bk-30010-MFW, No. 1) in this Court's bankruptcy division ("Bankruptcy Division"). Monica M. Howard ("Howard") was appointed Interim Trustee[2] for PWKH. As Interim Trustee for PWKH's bankruptcy estate, Howard controlled the Warehouse for five months. Although Howard assured Silverman PWKH would vacate the Warehouse and pay rent pursuant to the Lease, PWKH did not vacate or pay rent to Silverman.

---

[1] 11 U.S.C. § 700 et seq. ("Chapter 7" of the Bankruptcy Code.)
[2] In a bankruptcy action, a trustee is appointed to administer the debtor's estate subject to supervision by the United States Trustees. See 11 U.S.C. § 541. Chapter 7 trustees in bankruptcy are chosen by the United States Trustee from a panel. The United States Department of Justice, http://www.justice.gov/ust/eo/private_trustee/locator/ (last visited Sept. 20, 2013). Section 701 of the U.S. Bankruptcy Code, 11 U.S.C. § 701, requires that the "United States Trustee appoint one disinterested panel member to serve as interim trustee in a chapter 7 case immediately after the order for relief . . . . The interim trustee serves until a trustee is elected under § 702 and qualifies under § 322 . . . . The interim trustee has all the duties and powers of a permanent trustee." U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees, p. 3-1 available at http://www.justice.gov/ust/eo/private_trustee/library/chapter07/docs/ch7_handbook/ch7_handbook_pii_2010.pdf (last visited Sept. 20, 2013).

On December 17, 2009, Silverman filed a Motion to Compel Surrender of the Warehouse, requesting that the Bankruptcy Division compel Howard to turn over possession of the Warehouse to Silverman. Subsequently, Howard resigned, and the United States Trustee appointed Adam Hoover as trustee.

On March 11, 2010, the Bankruptcy Division denied Silverman's motion and sua sponte entered an order declaring PWKH the owner of the Warehouse and determining that Silverman held a $200,000 mortgage against the Warehouse. Silverman timely appealed to this Court.

## II. JURISDICTION AND STANDARD OF REVIEW

Title 28 U.S.C. § 158 provides in relevant part that

> [t]he district courts of the United States shall have jurisdiction to hear appeals . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. § 157. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a).

"Appellate courts generally apply the 'clearly erroneous' standard to findings of fact and de novo review to conclusions of law." *Sacharko v. Geremia* (*In re Sacharko*), 2007 Bankr. LEXIS 735, at *3 (1st Cir. 2007) (citations omitted); see also *In Re Prosser*, 2008 WL 3979476 (D.V.I. 2008), *aff'd* 388 Fed.Appx. 101 (3d Cir. 2010).

*In re PWKH, Inc.*
Civil No. 2010-31
Memorandum Opinion
Page 6

If facts are in dispute, Bankruptcy Rule 8013 sets forth the standard of review, providing that "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; *Williams v. Bank One Cleveland, NA* (*In re Dyac Corp.*), 1994 U.S. Dist. LEXIS 2611, at *5, 1994 WL 67952 (Bankr. N.D. Ohio 1994). "An abuse of discretion occurs when the bankruptcy court relies upon clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Nischwitz v. Miskovic* (*In re Airspect Air, Inc.*), 385 F.3d 915, 920 (6th Cir. 2004).

### III. DISCUSSION

A trustee is required to timely perform the obligations of the debtor. The trustee has specific obligations if the debtor is a lessee of nonresidential property. Under 11 U.S.C. § 365 ("Section 365"),

> (d)(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the

> provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.
>
> (4)(A) Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--
>
>> (i) the date that is 120 days after the date of the order for relief; or
>>
>> (ii) the date of the entry of an order confirming a plan.
>
> (B)(i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
>
> (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.
>
> . . . .

11 U.S.C.A. § 365(d)(1), (3)-(4) (West).

The Third Circuit has held that "Section 365 of Title 11 requires that a bankruptcy trustee fulfill all the obligations that arise under a non-residential lease subsequent to the entry of the bankruptcy order and prior to the time that the lease is rejected." *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 206 (3d Cir. 2001) (trustee required to make entire payment called for in the lease in accordance with its terms).

*In re PWKH, Inc.*
Civil No. 2010-31
Memorandum Opinion
Page 8

## IV. ANALYSIS

While Silverman has identified nine issues on appeal,[3] they all stem from the bankruptcy judge's interpretation of the Contract of Sale, Lease, and other documents.

---

[3] Those issues are:
  1. Whether the lower court erred in denying David Silverman's Motion for Order Compelling Surrender of Warehouse Pursuant to 11 U.S.C. § 365(d).

  2. Whether the lower court erred in determining that the Contract of Sale, Lease, and other documents executed in 1996 between Silverman's predecessor in interest and the debtor, the Sales Agreement dated October 3, 2008 and signed by David Silverman on February 5, 2009, and the Warranty Deed executed on March 3, 2009, must be reviewed together.

  3. Whether the lower court erred in determining the 1996 agreement to transfer title to the warehouse is a contract for deed, which is governed by Restatement (3d) of Property, Mortgages, Section 3.4 (b), which provides that "A Contract for Deed Creates A Mortgage."

  4. Whether, if there is a valid contract for deed, the lower court erred in determining that the debtor, PWKH, Inc. is the owner of Parcel 171-A Estate Altona & Welgunst by virtue of the same.

  5. Whether the lower court erred in determining that the Sales Agreement is an amendment to the mortgage.

  6. Whether the lower court erred in determining that David Silverman, as assignee of Prime Foods & Supply, Inc. holds a mortgage in the amount of $200,000 against Parcel 171-A Altona & Welgunst.

A. <u>**Nature of Contract for Sale and Lease**</u>

The Bankruptcy Judge ruled that the Contract for Sale, Lease, and other documents executed in 1996, constituted a mortgage rather than a lease. (3:09 Bankr. 30010, ECF No. 64).

The Court has found no provision of the Virgin Islands Code that addresses whether to consider multiple documents as one contract for deed. In the absence of such local authority, the Court must turn to the Restatement of law.[4]

---

> 7. Whether the lower court denied interest to Silverman and if so whether the court erred in doing so and in failing to state the interest rate and date of calculation of interest.
>
> 8. Whether the lower court erred in failing to hold a proper evidentiary hearing before making its findings of fact and conclusions of law and in relying on unsworn hearsay testimony as a basis for making findings of fact.
>
> 9. Whether the lower Court erred in sua sponte entering findings of fact and conclusions of law not sought by motion of any party.

(ECF No. 10.)

[4] 1 V.I.C. § 4 provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

*In re PWKH, Inc.*
Civil No. 2010-31
Memorandum Opinion
Page 10

>   Pursuant to the Restatement (Third) of Property

(Mortgages),

>   (a) A contract for deed is a contract for the purchase and sale of real estate under which the purchaser acquires the immediate right to possession of the real estate and the vendor defers delivery of a deed until a later time to secure all or part of the purchase price.
>
>   (b) A contract for deed creates a mortgage.

Restatement (Third) of Property (Mortgages) § 3.4 (1997).

>   The contract for deed must be distinguished from the ordinary executory contract for the sale of land . . . The latter device is clearly not a mortgage. While the contract for deed is a long-term vendor financing device, the earnest money contract governs the rights and liabilities of the parties during the short period between the date of the bargain and the date of closing, usually a period of a few months. At the closing of the earnest money contract, the purchaser either tenders the full purchase price or deals with any balance by delivering a purchase money mortgage to the seller or some third party. Indeed, where the transaction contemplates seller financing, the closing of the earnest money contract may involve the execution by the purchaser of a contract for deed rather than a purchase-money mortgage. Courts should not readily convert an earnest money contract into a contract for deed. For example, a purchaser under an earnest money contract occasionally will go into possession of the real estate for a short period prior to the closing. Where this occurs, the parties will be governed by landlord-tenant law and a contract for deed relationship will not be created.

Restatement (Third) of Property (Mortgages) § 3.4 cmt. a (1997).

> This section treats the contract for deed as a mortgage. Not only is the contract for deed governed procedurally and substantively by the law of mortgages, but the parties are permitted to vary that result by agreement only to the extent that parties to a normal mortgage transaction are so empowered.
>
> . . . .
>
> . . . mortgage treatment will eliminate a difficult problem that arises during a purchaser bankruptcy. If a contract for deed is deemed an "executory contract" for purposes of § 365(a) of the Bankruptcy Code, the vendor may compel the purchaser-debtor to assume or reject the contract. If the purchaser assumes the contract, § 365(b) requires the purchaser to cure the default, compensate the vendor for any damages caused by it, and provide adequate assurance of future performance of the contract obligations. If the bankruptcy estate is unable to satisfy these requirements, the contract will be deemed rejected and the purchaser will lose the land. To the extent that the land is worth more than the contract balance, the surplus will inure to the vendor's benefit. On the other hand, if the contract for deed is treated as a mortgage, the foregoing Bankruptcy Code sections may not be invoked by the vendor, who will be treated just as any other mortgagee in the bankruptcy proceeding. Thus, the vendor will be entitled only to the contract balance and not the land itself.

Restatement (Third) of Property (Mortgages) § 3.4 cmt. d (1997)

At issue here is whether multiple documents can be construed as one contract for deed. The Third Circuit has ruled on the question of whether multiple documents should be considered as separate contracts or as a single contract. In *Kroblin v. Pitterich*, 805 F.2d 96 (3d Cir. 1986), the United States Court of Appeals for the Third Circuit addressed whether several documents should be considered together as one contract.

In that case, a buyer agreed to make various payments to purchase all of a trucking company's stock. On that same date, the buyer and seller entered into a noncompetition agreement. The buyer agreed to pay the seller $100,000 in exchange for the seller's promise not to compete with the trucking company. The buyer ceased payments on the seller's loans and refused to pay the seller under the noncompetition agreement. Lawsuits between the parties ensued.

The district court determined that the purchase agreement and noncompetition agreement were separate contracts. The Third Circuit reversed and concluded as a matter of law that the two agreements should be interpreted as one contract because they were associated with the same transaction: the sale of the trucking company. The appellate court held that "[i]t is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, [with] each [document] contributing to the ascertainment of the true intent of the parties." *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir. 1986).

In so holding, the Third Circuit looked to the simultaneous execution of the agreements, the fact that the purchase

agreement would not go forward without the noncompetition agreement, and a passage in the purchase agreement stating that the buyer would not have entered into the purchase agreement unless the seller agreed not to compete in the same area with the same customers. *Id.* at 108.

A different outcome was reached in *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993). In that case, the Third Circuit addressed the interrelatedness of multiple documents. The Third Circuit held that "regardless of the various interrelationships of the agreements, it is clear as a matter of contract law that the applicability of certain provisions may be limited to the documents in which they actually appear. Even where several instruments pertaining to one transaction must be construed together, the provisions of one instrument are not thereby imported bodily into another. The application of the rule does not result in actual consolidation of the several contracts." *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) (citations and quotations omitted). Unlike *Kroblin*, in *USX Corp.* the documents were signed on different days, were different in subjects, and shared a lesser degree of interrelatedness.

Here, the Lease, Contract of Sale, and other documents executed in 1996, were executed contemporaneously as part of the

*In re PWKH, Inc.*
Civil No. 2010-31
Memorandum Opinion
Page 14

same transaction to transfer the assets of Prime Foods to PWKH. The Lease and Contract of Sale reference one another and contain overlapping terms. The language of the Contract of Sale and the Lease provide that if all obligations under the Lease and Contract for Sale are satisfied, PWKH will take title to the Warehouse. For either agreement to proceed, it is required that neither agreement be in default. Specifically, the Contract of Sale provides that

> On the last day of the thirty (30) year Lease between Buyer and Seller (Landlord and Tenant), *provided that the Lease and this Agreement are not in default*, Seller agrees to sell and deliver to Buyer for One Dollar ($1.00), marketable title via Warranty Deed to [the warehouse] . . .

(Bankr. No. 09-30010, ECF No. 39-1, Contract of Sale, page 2) (emphasis added). The Lease provides that

> the Seller warrants that it has good title and will have the ability to transfer the title free and clear of all encumbrances at the end of the thirty year Lease, *provided that Buyer is not in default of this Lease or the Contract of Sale* on even date herewith.

(Bankr. No. 09-30010, ECF No. 23-1, Lease, page 1) (emphasis added).

    The Contract of Sale and the Lease are intertwined by the same subject matter. The Contract of Sale explicitly relies on the Lease agreement such that neither of them separately embody the whole of the agreement. Therefore, the Bankruptcy Division properly read the Lease and Contract of Sale together.

Read together, the Lease and Contract of Sale fall squarely within the Restatement's definition of contract for deed. The Restatement (Third) of Property (Mortgages) provides that, in an installment land contract, the deed to the land does not pass until payment is complete:

> The purchaser normally takes possession upon execution of the contract for deed and makes installment payments of principal and interest until the contract balance is fully satisfied. While the purchaser obtains equitable title upon execution of the contract, legal title is retained by the vendor until the final payment is made.

Restatement (Third) of Property (Mortgages) § 3.4 cmt. a (1996). PWKH acquired the immediate right to possession of the Warehouse and Silverman deferred delivery of the deed until a later time to secure the purchase price. The Restatement provides that a "contract for deed creates a mortgage." Restatement (Third) Property (Mortgages) § 3.4(b). As such, Silverman holds a mortgage on the Warehouse. *Id*. at § 3.4(b). The Bankruptcy Division did not err in determining that Silverman holds a mortgage.

B. **Sales Agreement as Amendment to "Mortgage"**

Silverman argues that the Bankruptcy Division erred in concluding that the October 3, 2008, Sales Agreement operated as an amendment to the mortgage, thereby reducing Silverman's security interest from $2,390,960 to $200,000 (ECF No. 10).

Silverman argues that his offer to sell the Warehouse for $200,000 should not reduce his security interest in the Warehouse.[5]

"The value of a security interest is determined in part by the value of the secured asset." *In re Taylor*, 599 F.3d 880, 891 (9th Cir. 2010). The value of a creditor's claim "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C.A. § 506 (West). Market value is the proper method of valuation where a debtor does not contemplate liquidation of the property. *In re Crouch*, Bkrtcy. W.D. Va. 1987, 80 B.R. 364 ("Where it was clear that debtor's purpose in bringing action to reduce amount of junior lien was to permit debtors to attempt to retain their property postpetition with liens on it of amount no greater than value of property, property would be valued according to its market value, rather than liquidation value.") "[I]n general for bankruptcy purposes, unless special circumstances are presented, market value is a preferred standard for many reasons."

---

[5] In Silverman's appellant's brief, he asserts that the Sales Agreement was merely an offer. He argues that, because Hosier and Watts never paid Silverman, there was no acceptance and therefore no contract. (ECF No. 10, at 22.)

*In re PWKH, Inc.*
Civil No. 2010-31
Memorandum Opinion
Page 17

*In re Yoder*, 32 B.R. 777, 779 (Bankr. W.D. Pa. 1983) *aff'd in part, rev'd in part*, 48 B.R. 744 (W.D. Pa. 1984) (reversed on other grounds) (finding the market value of a property to be the actual value of the mortgages).

Here, there is no indication that $200,000 is the market value of the Warehouse. A total of $2,638,085 remained due on the Warehouse before the Lease terminated and PWKH could obtain ownership. Silverman made an offer to sell the Warehouse to PWKH for $200,000, but PWKH did not accept this offer to form a valid contract.

Formation of a valid contract requires mutual assent to the terms and conditions of an agreement. *Gardiner v. Virgin Islands Water & Power Auth.*, 896 F.Supp. 491, 497 (D.V.I. 1995) ("The only essential prerequisite for creation of a valid contract is that the parties mutually assent to the terms and conditions of the agreement."), *aff'd*, 145 F.3d 635 (3d Cir. 1998). "The local law generally applicable to contracts in the Virgin Islands is the Restatement (Second) of Contracts." *Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc.*, 761 F. Supp. 1231, 1233 (D.V.I. 1991) (citations omitted) (holding that parties with a mere leasehold need not assent to a proposed settlement agreement granting mutual easements to adjoining landowners).

Pursuant to the Restatement (Second) of Contracts, "An offer gives to the offeree a continuing power to complete the manifestation of mutual assent by acceptance of the offer." Restatement (Second) of Contracts § 35(1) (1981). According to the Restatement (Second) of Contracts,

> (1) Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.
>
> (2) Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise.
>
> (3) Acceptance by a promise requires that the offeree complete every act essential to the making of the promise.

Restatement (Second) of Contracts § 50 (1981).

"An offer is accepted if, and only if, the terms of the acceptance mirror those of the offer." *Isidor Paiewonsky Associates, Inc. v. Sharp Properties, Inc.*, 761 F. Supp. 1231, 1233 (D.V.I. 1991). A manifestation of mutual assent "may be made wholly or partly by written or spoken words or by other acts or by failure to act." *Morton v. Hewitt*, 202 F. Supp. 2d 394, 396 (D.V.I. 2002) aff'd, 78 F. App'x 793 (3d Cir. 2003) (citing Restatement (Second) of Contracts §§ 18, 19) (holding home repair agreement enforceable when terms certain enough for

the court to determine whether a breach occurred and what the remedy would be).

It is axiomatic that where there is no acceptance, there is no contract. The document captioned as "Sales Agreement" was an offer from Silverman to Terry Hosier and Alvin Watts, operators of PWKH, to purchase the Warehouse for $200,000. The Sales Agreement was dated October 3, 2008. Silverman signed the Sales Agreement on February 5, 2009. However, Hosier and Watts did not accept because they did not pay Silverman $200,000. Without acceptance, the Sales Agreement was merely an offer, and should not have been given legal effect. The Bankruptcy Division erred by looking beyond the Contract of Sale and Lease to vary the worth of the Warehouse.

Therefore, the Bankruptcy Division erred in concluding that the Sales Agreement operated to amend the mortgage. Further, the Bankruptcy Division erred in determining that Silverman's mortgage is in the amount of $200,000 against the Warehouse.

Because the Court finds that the Bankruptcy Division improperly determined Silverman's security interest in the Warehouse, the Court need not reach the remaining issues on appeal. The Court will vacate the Bankruptcy Division's March 11, 2010, Order insofar as it determined that Silverman's interest in the Warehouse is $200,000. The Court affirms the

*In re PWKH, Inc.*
Civil No. 2010-31
Memorandum Opinion
Page 20

Bankruptcy Division's March 11, 2010, Order, insofar as it determined that Silverman holds a mortgage on the Warehouse. The Court remands this matter to the Bankruptcy Division for additional proceedings consistent with this Opinion. An appropriate judgment follows.

S\_____
**Curtis V. Gómez
District Judge**